# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

| | |
|---|---|
| BOBBY SPEARS ) | |
|         **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **CIVIL ACTION NO:** |
| MINE SAFETY APPLIANCES COMPANY, LLC; ) | |
| AMERICAN OPTICAL CORPORATION; CABOT ) | 2:23-cv-00808 |
| CSC, LLC; AEARO TECHNOLOGIES, LLC; 3M ) | |
| COMPANY ) | |
| ) | |
|         **Defendants.** ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff, Bobby Spears, by and through counsel, and for his cause of action against the above-named Defendants, jointly and severally, state as follows:

### I. INTRODUCTION

1. This lawsuit is filed on behalf of Bobby Spears (hereinafter "Plaintiff"), who worked as a coal miner within West Virginia and was exposed to substantial amounts of harmful dust because the respirators he used failed to protect him. The respirators were designed, manufactured and sold by Defendants. As a result, Plaintiff developed coal worker's pneumoconiosis.

### II. PARTIES

2. Plaintiff, Bobby Spears is a resident of the Commonwealth of Kentucky and lives in Kimper, Kentucky. Plaintiff first learned he had coal worker's pneumoconiosis within the last two years.

1

3. Defendant, **Mine Safety Appliances Company, LLC** (hereinafter "MSA") is a corporation duly organized and existing under the laws of the State of Pennsylvania with its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066. MSA has and continues to do business in West Virginia. The agent for service of process for Mine Safety Appliances Company is CT Corporation System, 1627 Quarrier St, Charleston, West Virginia 25311-2124.

4. Defendant **American Optical Corporation** (hereinafter "AO") is a foreign corporation with its principal place of business in Massachusetts. AO did business in West Virginia. AO may be served with process by serving its agent, Karen Ross, Tucker Ellis, LLP, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113.

5. Defendant **Cabot CSC LLC f/k/a Cabot Safety Corporation** (hereinafter "Cabot") is a foreign corporation located in Delaware. Cabot did business in West Virginia. Cabot may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6. Defendant **Aearo Technologies LLC** (hereinafter "Aearo") is a foreign corporation whose principal place of business in in Minnesota. Aearo has and continues to do business in West Virginia. Aearo may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7. Defendant **3M Company** (hereinafter "3M") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Minnesota. 3M has and continues to do business in West Virginia. The agent for service of process of 3M Company is Corporation Service Company, 209 West Washington Street, Charleston, West Virginia 25302.

### III. JURISDICTION

8. Plaintiff's claims are brought solely under West Virginia law and Plaintiff states that he does not bring any claims and disclaims any and all claims under federal laws, statutes or regulations.

9. The Defendants are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.00.

10. Defendants are all corporations or other business entities which have been and/or are now manufacturing, selling, distributing, supplying, or otherwise placing in the stream of commerce respirators, dust masks, or other respiratory protection. This Court has personal jurisdiction over all out of state Defendants under W. Va. Code §56-6-33 (Long Arm Statute) and W. Va. Code §31-1-15 as these Defendants have transacted business in this State and supplied their products and committed a tort within the State of West Virginia.

### IV. VENUE

11. The Court has venue of this action pursuant to 28 U.S.C. § 1391 in that the Plaintiff used respirators designed, manufactured, sold, distributed and/or supplied by the Defendants in Logan County, West Virginia and surrounding areas, and sustained injury as a result thereof.

### V. FACTS

12. Plaintiff worked as a coal miner from approximately 1970 until 1999 at the following locations and positions (the dates of employment are approximate if known):

    a. 1970 to 1999 for Island Creek Coal Company, first in Pike County, Kentucky and then for Laurel Creek in Logan County, West Virginia – underground mine, operated a trip motor, pinned top, section boss. Also worked at the tipple.

    b. 1999 to 2000 for Consol, in Pike County, Kentucky, as section boss.

3

13. During the course of his mining career, Plaintiff used respirators designed, manufactured and sold by Defendants for protection against harmful dust. Plaintiff used Defendants' respirators in their intended manner.

14. Defendants, MSA, 3M, AO, Cabot, and Aearo designed, manufactured, distributed, supplied, and sold the respirators used by Plaintiff. Plaintiff used the MSA Dustfoe 66, MSA Dustfoe 88, 3M 8710, 3M 8210, and AO 2090N respirators.

15. The respirators used by Plaintiff and designed, manufactured, sold, and distributed by the Defendants were subjected to normal use and remained, in all material respects, in the same condition as at the time of sale.

16. The Defendants' respirators used by Plaintiff leaked substantial amounts of harmful dust into his breathing zone. The defects causing the leakage were hidden, and the dust leaking through the Defendants' respirators was so small (submicron in size), it was undetectable by the human senses including Plaintiff's. Thus, Plaintiff was not aware of the harmful dust leaking through Defendants' respirators nor of the causal connection between his respirators and his disease; rather, he believed that the Defendants' respirators were protecting his lungs from the harmful dust in the mines. Plaintiff only discovered that the respirators he used may have been a cause of his disease within two years of filing this Complaint.

17. MSA designed, manufactured, sold, marketed, and distributed the MSA Dustfoe 66 and Dustfoe 88. These respirators could not and did not provide sufficient protection in a coal mining environment. MSA never informed Mr. Spears nor his mining employers of this. Instead, MSA represented that the MSA Dustfoe 66 and Dustfoe 88 offered effective respiratory protection in coal mining environments.

18. Additionally, the evidence will show that the MSA Dustfoe 66 and Dustfoe 88 respirators were improperly designed including, but not limited to, the following particulars:

   a. In designing and manufacturing a respirator which failed to allow the user to perform a proper fit test and/or fit check on the respirator as prescribed by the American National Standards Institute (ANSI) Standard for Respiratory Protection as prescribed by ANSI Z88.2;

   b. In designing and manufacturing filter material for the Dustfoe 66 and Dustfoe 88 which lost the ability to provide effective filtration when exposed to environments of high humidity, like a coal mine;

   c. In designing and manufacturing a face piece for the Dustfoe 66 and Dustfoe 88 which allowed for leakage between the face cushion and the metal respirator body;

   d. In designing and manufacturing exhalation valves for the Dustfoe 66 and Dustfoe 88 which would allow back leakage;

   e. In designing and manufacturing exhalation valves for the Dustfoe 66 and Dustfoe 88 which did not provide for protection of the exhalation valves from normal wear and tear.

19. The evidence will show that the 3M 8710 and 3M 8210 respirators were never designed to capably protect workers exposed to pneumoconiosis producing dusts, including silica dust. A face piece to face fit check could not be satisfactorily performed by the wearer, preventing a proper fit. This occurred because of the design of the respirator. 3M, though aware of this defect, sold and marketed these respirators/dust masks knowing that these respirators/dust masks could not achieve a satisfactory fit check. 3M intentionally and knowingly refused to inform purchasers of this defect. The Defendant refused to inform purchasers that the American National Standards Institute, a national consensus organization of manufacturers and safety experts, had declared that testing the fit of these type of respirators/dust masks with a proper face seal was "impossible" to perform. Despite the declaration from this well respected and nationally recognized organization of which the Defendants are members, the Defendant continued to sell these respirators/dust masks knowing that they could not be checked for fit by the wearer. Furthermore, while persons like

Plaintiff used the 3M 8710/8210, a periodic fit test on the respirator to determine proper fit in a test atmosphere could not be performed. No such suitable test agent was available for the 3M 8710/8210 to successfully test in a testing atmosphere, making it impossible for employers to ensure their employees had a proper fitting respirator.

    a. Such inability to test the fit of these disposable respirators/dust masks made these products unreasonably dangerous yet the Defendants continued to sell these products knowing that they created an unreasonable danger. This failure to disclose was intentional and willful and carried out by vice principals of the Defendants responsible for the sale and design of these respirators/dust masks because disclosure of such information would have resulted in the inability to sell respirators/dust masks to the public for the use which they were intended. Therefore, the Defendants knowingly, intentionally, and willfully continued to sell these respirators/dust masks in their dangerous condition knowing that they were unreasonably dangerous and unsafe. The Defendants continued to do so with ill will in order to continue the sale of these products and preserve its market share of these products, which it otherwise would have been unable to sell. Such conduct warrants the imposition of punitive and/or exemplary damages pursuant to West Virginia law.

    b. The evidence will also show that the 3M 8710 and/or 3M 8210 filter material could not effectively protect a user from inhaling pneumoconiosis causing dust, including silica and coal dust.

    c. 3M knew of the defects in its respirators through its own quality control program. These defects would not be readily identifiable or known to the ordinary user of its respirators, like Plaintiff or Plaintiff's employers. Yet 3M continued to sell the 3M 8710 and 3M 8210 without informing purchasers of the deficiencies in its 8710 and 8210 respirators. 3M Company continued to manufacture, distribute, and sell these respirators even though these masks were defective.

20. The AO/Cabot (AO-C) quarter mask respirators were never once tested in a coal mine to determine if the respirators could, in fact, provide adequate respiratory protection. AO-C utilized electrostatically charged wool and/or synthetic blended filters and/or mechanical wool and/or synthetic filters for the use in the respirator. By 1965, it was widely known among authorities for respirator filtration that these types of filters would substantially degrade when exposed to high humidity. The evidence will show that underground coal mines operate in very

high humidity conditions. Notwithstanding that AO-C never tested a respirator in a coal mine, this Defendant also failed to test the respirator in any environment with high humidity to determine the performance characteristics of the filter.

    a.    By 1978, independent government sponsored studies performed testing on electrostatically charged felt and mechanical filters and concluded that use of electrostatically charged synthetic and/or wool filters in high humid environments showed a significant increase in dust penetration. Independent third-party studies performed by the Los Alamos Scientific Laboratory, at the request of NIOSH confirmed, degradation of these type of filters in high humidity environments causing respirator leakage. This Defendant was directly informed of these findings. Despite gaining knowledge from respected independent testing authorities, it took no affirmative action to discount the conclusions relating to the scientifically valid studies demonstrating filtration deficiencies and continued to sell the respirator with knowledge of these performance deficiencies relating to the filters. It failed to disclose these deficiencies to any of its customers or users.

    b.    Despite the general acceptance in the scientific community that electrostatically charged wool and/or synthetic, as well as non-charged mechanical filters, rapidly degrade when used in high humid environments, this Defendant continued to sell this respirator without ever even attempting to test its filter in a high humidity setting to confirm or refute the findings of the Los Alamos Scientific Laboratories. Consequently, the filtration of the respirator was defective because the filter would leak in high humid environments.

21. Plaintiff has developed coal worker's pneumoconiosis. His lung disease was caused by the hidden defects in, and the inadequate warnings provided with, the Defendants' respirators.

## VI. CAUSES OF ACTION

### COUNT ONE – STRICT LIABILITY CLAIM AGAINST DEFENDANTS

22. Plaintiff adopts by reference the allegations contained and set forth above.

23. West Virginia law provides that manufacturers and distributors (MSA, 3M, AO, Cabot, and Aearo) be held strictly liable when they place into the stream of commerce a product that is not reasonably safe for its intended use, and the unsafe product is a cause of harm to the Plaintiff.

24. Defendants are strictly liable in tort to the Plaintiff because they sold and distributed defective products; namely, the Defendants' respirators used by Plaintiff. Plaintiff will prove that the Defendants' respirators were not reasonably safe for their intended and foreseeable use for one or more of the following reasons:

   a. When used in coal mining conditions, the respirators leaked substantial amounts of harmful dust into the breathing zone of the Plaintiff, including through the filter of the respirators and around the face seal of the respirators;

   b. The defect in the respirators causing the leakage was not detectable by Plaintiff and was not obvious in nature;

   c. The harmful dust leaking through the respirators and into Plaintiff's breathing zone was not detectable by the human senses because it was too small in size and is odorless;

   d. Defendants failed to provide any type of warning of the hidden leakage problem;

   e. A reasonably prudent manufacturer would not have designed, manufactured, sold and distributed respirators with this hidden defect and with inadequate warnings in the relevant time frame. This is particularly true because a respirator is a safety product on which miners rely to protect themselves and their health;

   f. Defendants, and other respirator manufacturers sold, in the relevant time frame, other types of dust respirators that did not substantially leak harmful dust when used in coal mining operations; and

   g. At all material times, Plaintiff used Defendants' respirators in their intended manner.

25. The MSA Dustfoe 66 was unreasonably dangerous in the following non-exclusive manners: the exhalation valves were defective; the mask would not properly seal to the face; it was difficult or impossible to perform a proper fit check; they were designed to leak; the filters were defective in that humidity caused them to lose their electrostatic charge; the two-point strap system was defective; and other defective designs to be proven throughout the litigation of this case. Due

to the defective nature of the MSA respirators, the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with coal worker's pneumoconiosis.

26. 3M Company designed, manufactured, marketed, and sold the 3M 8710 from 1972 until the late 1990's. The 8710 was replaced by the 3M 8210 which is still sold today. 3M sold other similar disposable filtering facepiece respirators with essentially the same design. The 8710, 8210, and other 3M filtering facepiece respirators are inferior to the products they were designed to compete against: elastomeric respirators which had been the industry standard for decades prior to 1972. 3M knew of many design defects in the 8710, 8210, and other 3M filtering facepiece respirators throughout their existence including, but not limited to: lack of exhalation and inhalation valves; lack of foam face seal; lack of adjustable straps; metal nose piece would relax after fitting; inability to perform a fit test until sometime after 1982; inability to perform a fit check/user seal check; inability to obtain a proper face seal; filter media was defective; undetectable face seal leakage; and other ways to be proven through the litigation of this case. 3M was aware of these defects and failed to correct the defects and/or inform users of these known defects. The defects, including manufacturing defects, present in the 8710 resulted in Plaintiff being exposed to occupational dust and causing his complicated coal worker's pneumoconiosis.

27. The AO/Cabot quarter mask respirators were unreasonably dangerous in the following non-exclusive manners: would not adequately seal to face; the two-point strap system was defective; would not properly filter deadly dusts; filters would lose efficiency in high humidity conditions; and other defective designs to be proven through the litigation of this case. Due to the defective nature of the 2090 type respirators the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with complicated coal worker's pneumoconiosis.

28. Based on the foregoing, the Defendants have breached the implied warranty of fitness because the respirators they placed into the stream of commerce were defective and not reasonably suitable, safe, or fit for the purposes for which they were sold. Implicit in the respirators' presence on the market was the representation by the manufacturers and sellers that the respirators would safely perform the functions for which they were constructed. (Breach of Implied Warranty Claim).

29. As a direct and proximate result of the defective and unsafe respirators designed, manufactured, distributed and sold by Defendants, Plaintiff has suffered serious bodily harm and/or damages.

## COUNT TWO – NEGLIGENCE CLAIM AGAINST DEFENDANTS

30. Plaintiff adopts by reference the allegations contained and set forth above.

31. Defendants are liable to the Plaintiff for negligence in one or more of the nonexclusive respects, which negligence was a direct and proximate cause of the harm and injuries suffered by the Plaintiff.

32. Despite Defendants' actual or constructive knowledge that the respirators posed an unreasonable risk of harm, Defendants:

    a. failed to provide adequate warning and/or instruction with regard to the respirators;

    b. failed to provide proper fitting instructions;

    c. either ignored the results of filtering and quality control tests performed they performed, or failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

    d. failed to properly design their respirators;

    e. failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

  f. failed to accompany their respirators with adequate warnings of their dangerous propensities;

  g. knew, or with the exercise of reasonable care, should have known that the respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

  h. failed to implement or enforce a valid quality control program to insure that the respirators were designed and manufactured in compliance with federal certification regulations; and

  i. failed to design and manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

33. Defendants knew or should have known that the respirators used by Plaintiff would not effectively protect coal miners, such as the Plaintiff, from inhalation of harmful dust particles. Specifically, based on their own testing and information and testing performed by others, Defendants knew or should have known that the filter and the respirator face seal would leak substantial amounts of harmful dust when used in coal mining operations. Defendants should have corrected the leakage problem or prohibited the use of these respirators in coal mining operations.

34. Defendants should have warned of the hidden dangers and limitations in the respirators when used in coal mines. Defendants were negligent in failing to do so.

35. Defendants knew or should have known that despite the defects described above, the respirators could meet the minimal governmental approval standards. Further, Defendants knew or should have known, that although the respirators used by Plaintiff could pass a minimal government approval test; these respirators still failed to provide adequate respiratory protection to the user. Defendant concealed and failed to disclose to the public at large, and the purchasers and users of their respirators, the fact that government approval did not mean that the respirators protected the worker in the field. Instead, Defendants engaged in using a governmental approval

as a cover for selling respirators which they knew, or should have known, were defective and ineffective.

36. The acts and omissions of Defendants described above constitute negligence in that there has been a failure to utilize reasonable care under the circumstances. As a direct and proximate result of the negligence of Defendants as set forth above, the Plaintiff has sustained bodily harm and/or damages.

### COUNT THREE -- FRAUD AGAINST MSA, 3M, AO, CABOT, AND AEARO

37. Plaintiff adopts by reference the allegation contained and set forth above.

38. Despite their knowledge of the limitations and deficiencies of their respirators, 3M, MSA, AO, Cabot, and Aearo engaged in a strategy to promote and sell their faulty respiratory products. The evidence will show that 3M, MSA, AO, Cabot, and Aearo knowingly made representations about their respirators that they would offer sufficient protection in a coal mine environment. The evidence will show that despite making these representations and including such representations on all packaging and marketing literature, the representations were untrue. The respirators were sold to the public with full knowledge by 3M, MSA, AO, Cabot, and Aearo that the respirators could not and did not provide sufficient protection in a coal mine environment. Such conduct constituted false representations and concealments with the intent to induce Plaintiff's employers into purchasing 3M, MSA, AO, Cabot, and Aearo respirators.

39. The evidence will also show that the representations set forth in the preceding paragraphs concerned material facts. Plaintiff's employers would not have endeavored to purchase 3M, MSA, AO, Cabot, and Aearo respirators if the Plaintiff's employers had known that the respirators would not offer sufficient protection in a coal mine environment. This representation was relied upon by Plaintiff's employers resulting in substantial injuries and damages to Plaintiff.

In this connection, Plaintiff further alleges that 3M and MSA purported to have, and did have, superior knowledge concerning the subject matter of the transaction described above, and Plaintiff and his employers justifiably relied on Defendants' superior knowledge. The above foregoing action taken by 3M, MSA, AO, Cabot, and Aearo constitutes fraud which proximately caused Plaintiff's injuries and damages.

40. Plaintiff will show that in performing the acts described herein, the Defendants, 3M, MSA, AO, Cabot, and Aearo acted maliciously, willfully, intentionally, recklessly, and in wanton and willful disregard of Plaintiff's safety. Accordingly, Plaintiff is entitled to punitive and/or exemplary damages.

## COUNT FOUR -- PUNITIVE DAMAGES
## AGAINST MSA, 3M, AO, CABOT, AND AEARO

41. Plaintiff adopts by reference the allegations contained and set forth above.

42. Defendants had actual knowledge that the type of respirators used by Plaintiff substantially leaked harmful, undetectable dust into the breathing zone of the wearer, when used in conditions commonly found in coal mining. Further, Defendants knew that the inhalation of such dust could cause serious, progressive lung disease. Nevertheless, Defendants specifically marketed the respirators as being safe and effective for use by coal miners.

43. Defendants should have warned that the type of respirators worn by Plaintiff were not appropriate for use in coal mining operations. Nothing prevented Defendants from taking such action.

44. Defendants are subject to a punitive damage award because they acted with gross fraud, malice, oppression or wanton, willful or reckless conduct towards the health and safety of the user of their respirators, here the Plaintiff. Further, the Defendants did not recall their respirators at any time nor ever warn of the hidden defects.

13

45. The suppression of information and misrepresentations by Defendants was motivated by their desire to obtain an unjust economic advantage, including maximizing sales and profits from the sale of the products at the expense of the health of coal miners, including the Plaintiff.

46. The aforesaid actions of Defendants constitute malicious willful and wanton conduct and gross negligence and demonstrate a complete disregard and indifference to the safety of the Plaintiff. As a result, Plaintiff seeks punitive damages against Defendants.

## VII. DAMAGES

47. Plaintiffs adopt by reference the allegations contained and set forth above.

48. Plaintiffs have sustained substantial damages as a result of the Defendants' defective products and conduct as described above. Mr. Spears' damages include, but are not limited to, severe and permanent injuries; medical, hospital, and other healthcare costs (past, present and future); physical pain and suffering (past, present and future); emotional distress and mental anguish (past, present and future); loss of ability to enjoy life (past, present and future); lost wages, earning capacity and other economic losses (past, present and future); and punitive damages.

49. Defendants are jointly and severally liable for the damages herein as they are strictly liable for the manufacture and sale of defective products, the respirators used by Plaintiff.

## VIII. PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against the Defendants jointly and severally, as follows:

1. For compensatory damages in an amount that is fair and reasonable as shown by the evidence;

2. For punitive damages against 3M**,** MSA, AO, Cabot, and Aearo in an amount that is fair and reasonable as shown by the evidence;

3.       For Plaintiff's costs herein expended;

4.       For prejudgment and post judgment interest until paid; and

5.       For all further relief to which Plaintiff is entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

*/s/ Ashley N. Lynch*
Ashley N. Lynch (WVSB #11714)
Guy R. Bucci (WVSB #0521)
108 ½ Capitol Street, Suite 200
Charleston, WV 25301
(681) 265-1960
guy.bucci@outlook.com
ashleynlynch@outlook.com